# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **WILLIAM MURAWSKI,** | |
| Plaintiff, | |
| v. | Case No. 16 C 9006 |
| **OFFICER REID and OFFICER WOLLGAST,** | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Defendants, Conservation Police Officers Nicholas Reid and David Wollgast (collectively the "Defendants" or "Defendant Officers"), move for summary judgment. For the reasons stated herein, Defendants' Motion (Dkt. No. 34) is granted.

### I. BACKGROUND

The following facts are undisputed unless designated otherwise. Plaintiff William Murawski ("Murawski") is a detective with the Chicago Police Department (Pl.'s Resp. to Defs.' Stmt. of Facts ("SOF") ¶ 1, Dkt. No. 44.) He is also a member of the Wilmington Recreation Club (the "WRC")—a not-for-profit organization that owns and manages recreational property in Wilmington, Illinois. (SOF ¶ 2.) The WRC and John Weitendorf ("Weitendorf") own all the land adjacent to an artificial lake at issue in this case. (Defs.' Resp. to Pl.'s Stmt. of Additional

Facts ("SOAF") ¶ 1, Dkt. No. 52.) The lake was created over 50 years ago after strip mining operations ceased and the strip-mining pit was filled in with water. (SOAF ¶ 3; SOF ¶ 4.) The lake is part of a water channel that is at least 4.7 miles long. (SOAF ¶ 4.) Water flows into and out of the lake through drainage culverts. (SOAF ¶ 5.) Defendants contend, however, that such water flow does not occur consistently, only at times; for example, after heavy rain. (*Id.*)

The WRC owns at least a portion of this lake. (SOF ¶ 4.) Pursuant to his WRC membership, Murawski maintained a dock on the lake and had permission to boat and fish on at least this portion of the lake. (SOAF ¶ 2.) The parties dispute, however, whether Weitendorf also owns a portion of the lake, and, if so, whether Murawski had permission to boat and fish on that portion of the lake. (SOF ¶ 4.) Weitendorf's property is surrounded by a six-foot-high fence, which continues across the water of the lake on an overhead cable. (SOF ¶ 5.) This fence separated the lake into two parts for over 40 years. (*Id.*) Sometime during the summer of 2015, a tornado damaged the fence, creating a hole large enough for a boat to pass through. (*Id.*) Despite acknowledging the existence of such a fence, Murawski disputes that the fence delineated a portion of the lake as belonging solely to Weitendorf. (*Id.*) With this backdrop in mind, the Court proceeds with an

overview of the incident and subsequent investigation leading up to Murawski's arrest and criminal prosecution, all of which form the basis of this civil lawsuit.

### A. Incident and Investigation

On September 17, 2015, Murawski and a male companion went boating and fishing out on the lake. (SOF ¶ 7.) Weitendorf observed the two, got on a boat, and approached them. (*Id.*) He informed the men that they were trespassing on his private property and asked them to leave. (SOF ¶ 8.) Murawski refused, responding that he had a right to fish on that portion of the lake. (*Id.*) The following day, Weitendorf called Defendant Officer Reid of the Illinois Department of Natural Resources Conservation Police to report the alleged trespass. (SOF ¶ 11.) Weitendorf then followed up by sending Officer Reid a letter summarizing his statement of the incident and attaching a photograph of Murawski in the boat on what Weitendorf purports was his portion of the lake. (SOF ¶ 12.) His lawyer also sent a letter to Officer Reid, which stated that Weitendorf was the legal owner of that portion of the lake and included a copy of the deed and legal description for Weitendorf's property. (SOF ¶ 13.) Thereafter, Officer Reid began his investigation into the incident.

On September 19, 2015, Officer Reid met with Weitendorf and WRC's manager, Brad Southall ("Southall"). (SOF ¶ 14.) In that

meeting, Southall identified Murawski as one of the occupants of the boat in the photograph Weitendorf took, and informed Officer Reid that the WRC's rules prohibit members from crossing through the fence to fish on Weitendorf's side of the lake. (SOF ¶ 15.) Later in his deposition, however, Southall admitted that his latter statement was probably an "unwritten rule," and to insinuate the rule as anything more than that was "an incorrect statement" and "an assumption that [he] should not have made." (Brad Southall Dep. 91:20-24; 92:1-14, Ex. 4 to Defs.' Mot. for Summ. J., Dkt. No. 31-4.)

On September 29, 2019, Weitendorf called Defendant Officer Wollgast, also of the Illinois Department of Natural Resources Conservation Police, to report that someone had cut the fence marking the boundary between his side of the lake and that of the WRC's. (SOF ¶ 16.) Officer Wollgast's investigation of the incident was inconclusive, though he did discover that someone had used channel locks to cut the fence down entirely. (SOF ¶ 17.)

Officer Wollgast later reached out to and interviewed Murawski, who confirmed that he had been on Weitendorf's side of the lake on September 17, 2015. (SOF ¶¶ 18-19.) In the interview, Murawski asserted that the lake was part of a watercourse since there was drainage into and out of the lake through a culvert. (SOF ¶ 20.) As such, Murawski believed he had riparian rights to

boat and fish on any portion of the lake. (SOF ¶¶ 20-21.) He later sent Officer Wollgast two Illinois state court opinions addressing riparian rights: *Beacham v. Lake Zurich Prop. Owners Ass'n*, 526 N.E. 2d 154 (Ill. 1988), and *LWL Land Trust v. Werner*, 2011 IL App (5th) 100100-U. (SOF ¶ 21.) Both Officer Wollgast and Officer Reid reviewed some aspect of these opinions, in addition to a more recent Illinois Supreme Court case addressing riparian rights: *Alderson v. Fatlan*, 867 N.E. 2d 1081 (Ill. App. Ct. 2007). (SOF ¶ 23; SOAF ¶¶ 16-18.) Officer Reid also consulted with a tax assessor to ascertain that Weitendorf owned the portion of the lake in dispute. (SOF ¶ 24.) Based on the foregoing, Officers Reid and Wollgast reported to the Will County State's Attorney's Office and recommended that the Office file charges against Murawski for trespassing. (SOF ¶ 25; SOAF ¶ 32.)

**B. Arrest and Criminal Prosecution**

Defendant Officers' report to the State's Attorney's Office included Weitendorf's signed statement; the legal deed and description of Weitendorf's property; a summary or copy of the aforementioned cases pertaining to riparian rights; and various photographs and other materials. (SOF ¶ 26.) Assistant State's Attorney Frank Byers ("Byers") reviewed the report and prepared a complaint, charging Murawski with one count of Criminal Trespass to Real Property, in violation of 720 ILCS 5/21-3. (SOF ¶ 27.)

Officer Reid signed that complaint. (*Id.*) Byers also requested and received authorization for an arrest warrant, which led to Murawski presenting himself to the Joliet Police Department. (SOF ¶¶ 28-29.)

Assistant State's Attorney Jaclyn Hilderbrand ("Hilderbrand") was assigned to prosecute Murawski, with a trial date set for April 14, 2016. (SOF ¶ 30.) Hilderbrand issued subpoenas to both Defendant Officers and Weitendorf, to no avail. (SOAF ¶¶ 38-39; SOF ¶ 31.) For personal reasons, each of the witnesses was unable to appear on April 14, 2016. (*Id.*) The court presiding over that prosecution denied Hilderbrand's motion to continue the trial, which resulted in Hildebrand dismissing the case *nolle prosequi*. (SOAF ¶ 40; SOF ¶¶31-32.) Hilderbrand later testified that she intended to refile the trespass charges against Murawski, but ultimately decided not to after Murawski's defense lawyer allegedly apologized on Murawski's behalf and informed her that Murawski would not go onto Weitendorf's land. (SOF ¶¶ 34-35.) Murawski denies that his lawyer ever apologized or made any such representation. (SOAF ¶ 42; SOF ¶ 35.)

### C. Instant Litigation

Because of the foregoing, Murawski brought the instant suit, alleging three claims against Officers Reid and Wollgast: (1) a 42 U.S.C. § 1983 false arrest claim (Count I); (2) an Illinois false

arrest claim (Count II); and (3) an Illinois malicious prosecution claim (Count III). Defendants now move for summary judgment on all claims, arguing that they had probable cause for the arrest, and, in the alternative, have immunity from suit.

## II. ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson,* 477 U.S. at 255).

### A. Section 1983 False Arrest Claim

Defendants argue that Murawski's § 1983 claim fails as a matter of law on two grounds: (1) Defendants had probable cause to arrest Murawski for trespass; and (2) Defendants are entitled to qualified immunity. The first ground is dispositive; thus, the second ground need not be considered.

### 1. Probable Cause

Courts look to the totality of the facts and circumstances known to the officer at the time of the arrest to determine whether the officer had probable cause to make an arrest. *Abbott v. Sangamon Cnty., III.*, 705 F.3d 706, 714 (7th Cir. 2013). A probable cause determination is an objective inquiry. *Whren v. United States*, 517 U.S. 806, 813 (1996). Given the totality of the circumstances, courts ask whether a reasonable, prudent person in the officer's position would believe that the arrestee had committed, was committing, or was about to commit a crime, giving rise to probable cause and justifying an arrest. *See Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause deals with probabilities, not hard certainties. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). It requires more than a hunch, but not necessarily a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable. *See Henry v. United States*, 361 U.S. 98, 102 (1959). Usually in a § 1983 false arrest case "the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make the decision on summary judgment."

*Abbott*, 705 F.3d at 714 (citing *Chelios v. Heavener,* 520 F.3d 678, 686 (7th Cir. 2008)).

In trespass cases, probable cause exists "where an officer could reasonably believe, given his knowledge of the facts and circumstances at the time, that the defendant committed or was committing trespass." *Kampinen v. Martinez*, 102 Fed. Appx. 492, 497 (7th Cir. 2004) (citing *United States v. Kincaid*, 212 F.3d 1025, 1028 (7th Cir. 2000)). Murawski was charged under an Illinois trespass statute, which provides that a person commits criminal trespass to real property when that person "remains upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a); *see also People v. Kraft*, 660 N.E. 2d 114, 117 (Ill. App. Ct. 1995). The notice requirement is satisfied when the perpetrator "has been notified personally, either orally or in writing." 720 ILCS 5/21-3(b).

Murawski raises a host of arguments against finding probable cause. His arguments assert, in one form or another, that a genuine issue of material fact exists as to the status and ownership of the lake, which, in turn, allegedly determines the existence of probable cause. To elaborate, under Illinois law, an "owner of a part of a lake bed has a right to the reasonable use and enjoyment of the entire lake surface." *Beacham v. Lake Zurich Prop. Owners Ass'n*, 526 N.E. 2d 154, 157 (Ill. 1988). However, such "riparian

rights do not extend to artificial bodies of water." *Alderson v. Fatlan*, 898 N.E. 2d 595, 601 (Ill. 2008). This is because "unlike a natural body of water, which exists because of natural processes, an artificial body of water is the result of someone's labor," and thus, "is not a natural resource to be shared by all." *Id.*

There is an exception, however. Riparian rights are extended to an artificial lake if the lake is considered part of a "watercourse." *Id.; see also Nottolini v. LaSalle Nat. Bank*, 782 N.E. 2d 980, 983 (Ill. App. Ct. 2003). Here, the parties agree that the lake is artificial; however, they dispute whether the lake is part of a watercourse. If considered as such, then Murawski, as a WRC member, has riparian rights to access the lake in its entirety. If not, then Murawski has no such rights. By extension, Murawski argues that if he has riparian rights to access the entirety of the lake, then the Officers did not have probable cause to arrest him. That determination, Murawski contends, is for the trier of fact.

The Court disagrees. The question of whether Murawski has riparian rights to access the lake is not dispositive of Defendant Officers' probable cause determination. Here, Defendant Officers received an incident report, which contained a signed statement by Weitendorf alleging that Murawski trespassed on his property, that Weitendorf had personally given Murawski oral notice of the

trespass, and that Murawski refused to depart. The report also included a photograph of Murawski on the portion of the lake that Weitendorf asserted he owns. To prove his ownership, Weitendorf provided the Officers with a copy of his deed to the land and the legal description of the land. That alone is enough to establish probable cause of trespass. *See Burritt v. Ditlefsen*, 807 F.3d 239, 250-51 (7th Cir. 2015) (finding that officers generally have "no duty to investigate the extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness"); *see also Kampinen*, 102 Fed. Appx. at 497 ("A report by a single, credible witness will suffice as a basis for this knowledge even if the officer did not witness the encounter first-hand.") (citing *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)).

Defendant Officers nevertheless conducted a subsequent investigation into the matter. That investigation led the Officers to interview Murawski, who admitted to being on the part of the lake that Weitendorf claimed to own. They also interviewed Brad Southall, the manager of WRC, who asserted that WRC members did not have rights to cross onto Weitendorf's side of the lake. Both Weitendorf and Southall informed the Officers that a chain-link fence had divided the lake into two for over 40 years, delineating which part of the lake belonged to whom. Officer Reid also

contacted a tax assessor to confirm that Weitendorf owned the property. The foregoing only bolstered Defendant Officers' finding of probable cause.

Murawski asserts, however, that during the investigation he informed the Officers that the lake was a part of a watercourse because of an artificial drainage culvert. This drainage culvert serves the basis for Murawski's claim that he had riparian rights to access the lake in its entirety. *See Alderson*, 898 N.E. 2d at 601. He sent the Officers several case citations regarding riparian rights to support his proposition. *See Beacham*, 526 N.E. 2d at 154; *LWL Land Trust*, 2011 IL App (5th) 100100-U. That information, Murawski contends, negates a finding of probable cause. Moreover, Murawski points out that Officer Wollgast, in his deposition, admitted that the lake was part of a watercourse. (SOAF ¶ 31; *see* Wollgast Dep. 81:7-23, Ex. C to Pl.'s Resp. to Defs.' Mot. for Summ. J., Dkt. No. 42-3.)

First, Officer Wollgast's subsequent testimony is immaterial. The crucial point of inquiry for a probable cause determination is what the Officers knew at the time of the arrest. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). Defendant Officers testified that, at the time of the arrest, they believed they had probable cause. (*See* Reid Dep. 158:7-11, 185:10-20, Ex. 2 to Defs.' Mot. for Summ. J., Dkt. No. 31-2; Wollgast Dep. 44:13-

21; 46:18-47:5.) While their after-the-fact testimony is also irrelevant, the record shows that an objectively reasonable officer who possessed the information Defendant Officers possessed would have determined there was probable cause to make the arrest. *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (emphasizing that "a jury must stand in the shoes of an officer and judge the reasonableness of his actions based on the information he possessed" at the time of the arrest). Prior to the arrest, the Officers had obtained Weitendorf's incident report, conducted their own separate investigation corroborating the report, reviewed the relevant case law, and informed the State's Attorney's Office before a warrant was issued for Murawski's arrest. That suffices.

Murawski attempts to argue that Defendants expertise in trespass as it relates to bodies of water negates a finding of probable cause. That cannot be so. In fact, it would seem the opposite is true. Officer Reid took it upon himself to look at maps to better understand the relevant waterways. (SOAF ¶ 25.) He has also been involved in at least 175 cases concerning trespass, over twenty of which involved trespassing on a body of water. (SOAF ¶ 26.) There is no clear evidence that the lake is a watercourse, but "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v.*

*Wesby*, 138 S. Ct. 577, 588 (2018). It nevertheless appears to the Court that, at the time of the arrest, Defendant Officers did not believe that the lake was a watercourse. That finding is reasonable and, given their experience and expertise on the subject, appears to have been an informed and thoughtful decision.

To state it more generally, an objectively reasonable officer, with or without Defendant Officers' expertise in such matters, would have determined there was probable cause that Murawski committed trespassing. Once an officer "has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Whether the lake is in fact a watercourse is irrelevant. The record shows that Defendants found reason to support each element of trespassing, and they need not have investigated further to ensure definitively the lake did or did not constitute a watercourse. Defendants had probable cause to arrest Murawski.

As a final note, Murawski mentions that he never stepped foot on Weitendorf's "land," which was asserted in the criminal complaint. This mistake of fact, however, is harmless. Murawski was charged under Criminal Trespass to Real Property, 720 ILCS 5/21-3, which provides that criminal trespass is committed when a person "remains upon the land of another, after receiving notice

from the owner or occupant to depart." 720 ILCS 5/21-3(a). The record shows that Defendant Officers investigated and pursued charges for Murawski's alleged trespass on Weitendorf's side of the lake. It is objectively reasonable for an officer to pursue criminal charges for trespass on a body of water through a general criminal trespass statute. Moreover, as Defendant Officers pointed out, Illinois case law and statutory law have recognized that a property owner may hold title to "submerged land" or to an artificial lake. *See, e.g., Bouris v. Largent*, 236 N.E. 2d 15, 18 (Ill. App. Ct. 1968) (recognizing that the riparian "right of access does not depend upon ownership of or title to the submerged land"); *see also* 520 ILCS 5/2.33(t) ("It is unlawful for any person to take or attempt to take any species of wildlife or parts thereof . . . within or upon the land of another, or upon waters flowing over or standing on the land of another"). As such, unless an individual has riparian rights, that individual may commit trespass on a body of water. Murawski's argument fails. Accordingly, Defendant Officers had probable cause for the arrest.

### B. State Law Claims

Defendants argue that Murawski's state law claims fail as a matter of law on two grounds: (1) Defendants had probable cause to prosecute Murawski for trespass; and (2) Defendants are entitled to sovereign and public official immunity. The Court need not

- 15 -

consider the latter argument since Murawski's claims fail for substantially the same reasons recited above—the existence of probable cause.

### *1. Illinois False Arrest Claim*

The lack of probable cause is also an element of an Illinois false arrest claim. *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) (citing *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 317 (Ill. App. Ct. 2006)); *see also Johnson v. Target Stores, Inc.*, 791 N.E. 2d 1206, 1220 (Ill. App. Ct. 2003) ("To sustain an action for false arrest, plaintiff must prove restraint or arrest caused or procured by the defendant, without his having reasonable grounds to believe that an offense was committed by the plaintiff.") The standard for evaluating probable cause is the same under Illinois and federal law. *See Gauger v. Hendle*, 954 N.E. 2d 307, 329 (Ill. App. Ct. 2011); *Holm v. Clark*, No. 11 C 1798, 2012 WL 1015956, at *6 (N.D. Ill. Mar. 23, 2012) (collecting cases).

For the reasons stated above, no reasonable juror could conclude that Defendants falsely arrested Murawski under Illinois law. *See Johnse v. Vill. of Rosemont*, No. 10 C 07097, 2013 WL 3668819, at *4 (N.D. Ill. July 12, 2013) (holding that where the arresting officers had probable cause under federal law to arrest the plaintiff, the plaintiff's "state law claim for false arrest

fails for the same reasons"). Murawski's Illinois false arrest claim fails as a matter of law.

### 2. *Malicious Prosecution Claim*

To establish a claim for malicious prosecution under Illinois law, Murawski must establish five elements: (1) commencement or continuation of an original proceeding by Defendants; (2) termination of the proceeding in favor of Murawski; (3) the absence of probable cause; (4) malice; and (5) damages. *See Colbert v. City of Chicago*, 851 F.3d 649, 654-55 (7th Cir. 2017). Probable cause is a complete defense to such a claim. *Id.* Different from a false arrest claim, "the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (citing *Porter v. City of Chicago*, 912 N.E. 2d 1262, 1274 (Ill. App. Ct. 2009)). For malicious prosecution under Illinois law, probable cause "is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. It is the state of mind of the person commencing the prosecution that is at issue — not the actual facts of the case or the guilt or the innocence of the accused." *Gauger*, 954 N.E. 2d at 329-30 (internal

quotation marks, citation, and emphasis omitted); *see also Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (same).

The record indisputably shows that at the time the charges against Murawski were filed, the Defendant Officers had the information Weitendorf provided to them and the evidence they gathered in their subsequent investigation. As with the false arrest claims, no reasonable juror could conclude from the record that the totality of the circumstances was insufficient to lead Defendants to entertain an honest and sound suspicion that Murawski unlawfully trespassed on Weitendorf's property. *See Seiser v. City of Chicago*, 762 F.3d 647, 660 n.6 (7th Cir. 2014) (emphasizing that "the Illinois Appellate court has twice rejected the notion that the probable cause standard for the decision to charge is meaningfully different from the probable cause standard for the decision to arrest") (citing cases).

Murawski's malicious prosecution claim fails for a second and independent reason. He cannot show that the criminal proceedings terminated in his favor. A malicious prosecution action "cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swich v. Liautaud*, 662 N.E. 2d 1238, 1242 (Ill. 1996) (citation omitted). Here, Assistant State's Attorney Hilderbrand subpoenaed Defendant Officers and Weitendorf to testify at trial,

but due to their unavailability and the presiding court's unwillingness to postpone trial, Hilderbrand dismissed the case *nolle prosequi*. Hilderbrand could have refiled the charges but ultimately chose not to—the reasons for which are disputed but irrelevant here. It is apparent that there was no favorable termination of Murawski's case. *See Williams v. S. Ill. Riverboat/Casino Cruises, Inc.*, No. 06-cv-664, 2008 WL 1766522 (S.D. Ill. Apr. 14, 2008) (finding no favorable termination where prosecutor "made the decision to dismiss the case not because he believed [the plaintiff] was innocent or because he could not succeed in prosecuting [the plaintiff] but instead purely to ensure the State's Attorney was able to try more important cases."). Accordingly, Defendant Officers are entitled to judgment as a matter of law on Murawski's malicious prosecution claim.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion for Summary Judgment (Dkt. No. 34.) is granted.

**IT IS SO ORDERED.**

                                                   Harry D. Leinenweber, Judge
                                                   United States District Court

Dated: 4/12/2019